# IN THE COURT OF APPEALS OF IOWA

No. 20-0222
Filed April 29. 2020

**IN THE INTEREST OF D.F.,**
**Minor Child,**

**T.H., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, District Associate Judge.

        The father appeals the termination of his parental rights to his child. **AFFIRMED.**

        Ryan M. Dale, Council Bluffs, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Roberta Megel, Council Bluffs, attorney and guardian ad litem for minor child.

        Considered by Bower, C.J., Schumacher, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

The putative father[1] appeals the termination of his parental rights to D.F., born in 2014.[2]  The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(b) and (e) (2019).  Here, the father argues his rights should not be terminated because the Iowa Department of Human Services (DHS) did not complete the court-ordered paternity testing on the father and termination is not in the child's best interests.

**I. Background Facts and Proceedings.**

DHS became involved with this family in January 2019.  At the time, D.F. was living with his maternal grandmother as part of an informal arrangement that began in 2017, but the grandmother's physical and mental health had deteriorated to the point she was no longer able to care for him on her own.[3]  The father was incarcerated in federal prison, and the mother was homeless and using methamphetamine.

D.F. was adjudicated a child in need of assistance and formally removed from the parents' care in March 2019.  As part of the adjudication order, DHS was ordered to complete paternity testing on the father.

The social worker's April report to the court indicated the worker sent a letter to the father at the out-of-state federal prison where he was incarcerated and left a message for the father's corrections counselor.  The worker received no response.  The worker called the corrections counselor a second time and

---

[1] All parties presumed the putative father is the biological father of D.F., but it was never established through paternity testing.  For ease, and because there are no other fathers at issue, we refer to the putative father as the father.

[2] The mother's parental rights were also terminated.  She does not appeal.

[3] The grandmother died in February.

was told the father had to complete a release before any information could be shared. As of the April 24 report date, the worker did not have a signed release from the father.

In May, D.F.'s placement became unable to care for him, and he was moved to the same home as his half-sibling, with whom he already had an established relationship.[4]

As of the social worker's July 1 report, the father remained in federal prison in Minnesota. According to the report:

> On 06/21/2019 this worker sent a fax to counselor McColey, [the father's] counselor at the prison, with an attachment of the last court report, and a request for confirmation of [the father's] intentions.
> On 06/26/2019, this worker received a call from the [father] regarding the situation. He stated his counselor had received the fax and contact information. [The father] noted that he was going to be transferred to South Dakota soon. [He] reported that he has been in prison since Thanksgiving 2017 for possession of firearms. . . .
> With regards to his relationship with [D.F.], he reported that he had not had any contact with [him] for about two years. When questioned about his prior relationship with [D.F.] financially and otherwise, he stated that he had never paid any child support and only saw him two or three times after his birth.

The father told the worker he wanted to pursue custody of D.F. after he discharged his sentence—scheduled to occur sometime in 2020. The worker encouraged the father to write D.F. letters to initiate a relationship with the child.

---

[4] The half-sibling lives with her father and paternal grandparents. D.F. was placed in the care of the half-sibling's paternal grandparents. D.F. and the half-sibling are related through their mother, so none of the adults in the home are biologically related to D.F.

In the worker's October report to the court, she noted that father had been moved to a federal prison in Missouri. The father had not sent any letters to D.F. and had not otherwise been in contact with the worker.

The family was assigned a new social worker in October, and the new worker sent the father two letters—one in October and one in November—with her contact information and a request that the father contact her.

As of the December report to the court, the father had yet to make contact with the new social worker. She noted he was unresponsive to her letters, and DHS had not received a signed release from the father.

The day before the scheduled termination hearing in December, the father filed a motion to continue, claiming DHS failed to provide the only service he asked for—paternity testing—and indicating he had family who was willing to take over caring for D.F. if the father was confirmed to be the biological father.

The court took up the motion at the outset of the hearing. The State resisted, noting the father had participated in each hearing (by telephone), yet only the adjudication order mentioned the paternity testing. Additionally, the father had been unresponsive to recent attempts at communication by DHS.

The court denied the motion, stating:

> Now, I want to make sure that the parties understand what this court's policy is with regard to continuances of [termination] hearings. If there's a due process issue where the parties are not able to properly prepare for or participate in the hearing or do not have proper notice of that hearing, continuances will be taken very seriously. If it's a question of whether reasonable efforts have been made and whether additional opportunities for reunification should be afforded, that's an evidentiary issue and ultimately goes to the question of whether termination of parental rights should be granted or not. So the Court is very reluctant, if ever, going to be granting continuances under those circumstances.

> The State has a right to present its petition and evidence, and whether the State has provided reasonable efforts or not goes to whether it should be granted or not, not whether the hearing itself should be continued. For those reasons the Court denies the request for the continuance.
>
> If there is a previous order that requires that paternity testing be done, whether this court grants the termination or not or whether it's taken under advisement or not, ultimately that can still be pursued while these matters are pending or—I doubt that the court is going to enter a bench order at the conclusion of testimony today, so that can still be pursued following today's hearing without delaying what is in this child's best interest.

The new social worker testified that paternity testing was not set up for the father because he had not signed a release. She testified she called the Missouri prison one or two times and left a message, but she had not received a return call from anyone.

Two members of the father's family testified; each stated they would be willing to take care of D.F. if it was confirmed the father was biologically related to him. Neither family member had ever met D.F.

D.F.'s caretaker, his half-sibling's paternal grandmother, testified about the strength and closeness of the relationship D.F. and his half-sibling share. She testified she intended to adopt D.F. and make him part of their family permanently.

In its ruling, the juvenile court generally found "that reasonable efforts have been made to achieve the primary permanency goal for the child in interest" but did not specifically rule regarding any issues with the paternity testing. In determining the father had abandoned or deserted D.F., the court found

> The evidence presented establishes that [the father] does not have a relationship with [D.F.] He has only met [the child] two or three times during [D.F.'s] life. He has never cared for [D.F.] nor has he provided any financial support for [him]. Although encouraged to

do so, [the father] has not attempted to foster a relationship with [D.F.]

The court terminated pursuant to section 232.116(1)(b) and (e).

The father appeals.

## II. Standard of Review.

We review termination proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

## III. Discussion.

The father argues his parental rights should not be terminated because DHS did not complete the court-ordered paternity testing on the father, which is the only service the father requested. We understand this to be a challenge regarding reasonable efforts. But Iowa Code section 232.116(1)(b)—one of the grounds cited by the juvenile court for termination—does not include a reasonable-efforts requirement.[5] *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (recognizing certain grounds for termination "contain a common element which implicates the reasonable effort requirement"); *In re B.P.*, No. 19-0870, 2019 WL 4298047, at *1 (Iowa Ct. App. Sept. 11, 2019) ("Under [section 232.116(1)(b)], reasonable efforts to reunify the parent with the child are not required.").

---

[5] We do not suggest either the juvenile court or DHS should avoid paternity testing. *See In re R.C.*, No. 19-2064, 2020 WL 1550686, at * 3–4 (Iowa Ct. App. Apr. 1, 2020). And here, we believe the record establishes that the failure to complete testing was the result of the father's failure to sign releases and stay in contact with DHS. Additionally, the father was presumed to be the biological father; he was appointed counsel, received notice, and participated in each hearing throughout the proceedings.

Section 232.116(1)(b) allows the juvenile court to terminate when "[t]he court finds that there is clear and convincing evidence that the child has been abandoned or deserted." Desertion is defined as "the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship." Iowa Code § 232.2(14). "Proof of desertion need not include the intention to desert, but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.* It is undisputed the father had no contact with D.F. during the two to three years he was incarcerated leading up to the termination proceeding. The father was encouraged to write letters to D.F. but failed to do so. He never provided for D.F. financially—even before the father's incarceration. The father deserted D.F., and termination under section 232.116(1)(b) is appropriate.

Next, the father argues termination of his rights is not in D.F.'s best interests because D.F. will lose "a whole side of family to support him." In considering the best interests of the child, we are required to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (rejecting the court's use of "its own unstructured best-interest test"). D.F. has never met the members of the father's family who expressed an interest in caring for him if paternity testing established a biological relationship between D.F. and the father. In contrast, at the time of the termination hearing, D.F. was living with his half-sibling, whom he had known his entire life. The people caring for him—biological relatives of the half-sibling—

were well-known to D.F. and intended to make him part of their family permanently. *See* Iowa Code § 232.116(2)(b) (providing as part of the best-interests analysis whether the placement family "is able and willing to permanently integrate the child into the foster family"). Termination of the father's rights is in D.F.'s best interests.

We affirm the termination of the father's parental rights.

**AFFIRMED.**